```
UNITED STATES DISTRICT COURT              (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
BIJAN KARIMIAN,                          :  10 Civ. 3773 (AKH) (JCF)
                                         :
             Plaintiff,                  :      MEMORANDUM
                                         :      AND  ORDER
     - against -                         :
                                         :
TIME EQUITIES, INC., FRANCIS             :
GREENBURGER, individually and in         :
his official capacity, ROBERT            :
KANTOR, individually and in his          :
official capacity, HYMAN SCHERMER,       :
individually and in his official         :
capacity,                                :
                 Defendants.             :
- - - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

     This is an action for employment discrimination, breach of
contract, and quantum meruit arising out of the termination of the
plaintiff's employment by the defendant, Time Equities, Inc.  On
March 18, 2011, the plaintiff's attorney of record, Tracey S.
Bernstein, Esq., moved to withdraw as counsel.  Mr. Bernstein also
requested confirmation of his charging lien on any recovery in this
action by the plaintiff, pursuant to New York Judiciary Law
("NYJL") § 475, and of his retaining lien against the plaintiff's
file for outstanding fees owed.  For the reasons set forth below,
Mr. Bernstein's motion to withdraw is granted, and his requested
relief is granted in part and deferred in part.

Background

     The complaint in this case was filed on May 7, 2010, following
which the defendant obtained counsel and filed an answer.  Shortly
thereafter, the plaintiff, Bijan Karimian, discharged his existing

counsel and retained Mr. Bernstein to represent him on a
contingency basis. (Attorney Affirmation in Support of Application
for Withdrawal as Plaintiff's Counsel dated March 18, 2011
("Bernstein Aff."), ¶ 7 & Exh. 1). Mr. Karimian agreed that Mr.
Bernstein would be entitled to one-third of any "final offer,
compromise, settlement, judgement or award" received in the case
and that Mr. Karimian would be "charged for all costs and
disbursements incurred in connection with these matters," including
postage, photocopying, and "deposition expenses." (Retainer
Agreement dated Aug. 11, 2010 ("Retainer Agreement"), attached as
part of Exh. 1 to Bernstein Aff.). Mr. Bernstein prepared and
filed an Amended Complaint on September 23, 2010, and discovery
commenced. (First Amended Complaint; Bernstein Aff., ¶ 10). As of
the filing of the present motion, numerous documents have been
exchanged and the plaintiff has been deposed; the depositions of
several defendants have been adjourned or postponed pending the
resolution of this motion. (Bernstein Aff., ¶¶ 10, 65, 80).
Discovery is scheduled to close on May 31, 2011. (Memorandum
Endorsement dated Feb. 10, 2011).

Although discovery in this case has progressed apace, the
relationship between Mr. Bernstein and Mr. Karimian has steadily
deteriorated. The relationship appears to have been contentious
from the beginning, with Mr. Bernstein threatening to withdraw as
counsel several times beginning in November 2010 and culminating in
the instant motion. (Bernstein Aff., ¶¶ 27, 35, 59, 61-63 & Exhs.
4, 6, 9; Client Statement and Evidence Objecting to Attorney's

Withdrawal Application ("Client St.") at 5, ¶¶ 9, 10, 16).

Discussion

A.   Withdrawal

Withdrawal of counsel is governed by Local Civil Rule 1.4, which states:

> An attorney who has appeared as attorney of record for a party . . . may not withdraw from a case without leave of the court granted by order.  Such an order may be granted only upon a showing by affidavit or otherwise of satisfactory reasons for withdrawal or displacement and the posture of the case, including its position, if any, on the calendar.

S. & E.D.N.Y.R. 1.4.  District courts must thus analyze two factors: the reasons for withdrawal and the impact of the withdrawal on the timing of the proceeding.  "Whether to grant or deny a motion to withdraw as counsel 'falls to the sound discretion of the trial court.'"  Stair v. Calhoun, 722 F. Supp. 2d 258, 264 (E.D.N.Y. 2010) (quoting In re Albert, 277 B.R. 38, 47 (Bankr. S.D.N.Y. 2002)).

"'[T]he existence of an irreconcilable conflict between attorney and client is a proper basis for the attorney to cease representing his client.'"  United States v. Lawrence Aviation Industries, No. 06 CV 4818, 2011 WL 601415, at *1 (E.D.N.Y. Feb. 11, 2011) (quoting Casper v. Lew Lieberbaum & Co., No. 97 Civ. 3016, 1999 WL 335334, at *5 (S.D.N.Y. May 26, 1999)); accord United States v. Up to $6,100,000 on Deposit in Account No. 15.5876 at Bank Julius Baer Co. (Guernsey Branch), No. 07 Civ. 4430, 2009 WL 1809992, at *5 (S.D.N.Y. June 24, 2009); D.E.A.R. Cinestudi S.p.A. v. International Media Films, Inc., No. 03 Civ. 3038, 2006 WL

3

1676485, at * 1 (S.D.N.Y. June 16, 2006); <u>Diarama Trading Co. v. J.
Walter Thompson U.S.A., Inc.</u>, No. 01 Civ. 2950, 2005 WL 1963945, at
*1 (S.D.N.Y. Aug. 15, 2005); <u>Hallmark Capital Corp. v. Red Rose
Collection, Inc.</u>, No. 96 Civ. 2839, 1997 WL 661146, at *2 (S.D.N.Y.
Oct. 21, 1997); <u>see also</u> <u>Munoz v. City of New York</u>, No. 04 Civ.
1105, 2008 WL 2843804, at *1 (S.D.N.Y. July 15, 2008) ("The law
firm has shown good cause for withdrawal based on the lack of
communication with the plaintiff and the acrimonious relationship
that has developed between the law firm and the plaintiff."). 
Indeed, "strong evidence of a strained attorney-client relationship
regardless of the source of the strain is sufficient grounds" for
an attorney to withdraw.  <u>Diarama Trading Co.</u>, 2005 WL 1963945, at
*2; <u>accord</u> <u>D.E.A.R. Cinestudi S.p.A.</u>, 2006 WL 1676485, at * 1;
<u>McGuire v. Wilson</u>, 735 F. Supp. 83, 85 (S.D.N.Y. 1990) (allowing
attorney to withdraw because "relationship between the parties has
deteriorated beyond repair" although fault for that deterioration
was disputed); <u>see also</u> <u>Benvenisti v. City of New York</u>, No. 04 Civ.
3166, 2006 WL 44039, at *1 (S.D.N.Y. Jan. 6, 2006) ("Although [the
client] opposes the application to withdraw it is clear that the
attorney-client relationship has broken down, and that the attorney
and client lack a certain amount of trust in each other.  Under
these conditions a termination of the relationship would be in the
best interest of both.").

    In this case, although Mr. Karimian objects to Mr. Bernstein's
withdrawal, it seems that he does so because he disputes Mr.
Bernstein's depiction of the way in which their relationship broke

4

down and because he is concerned that his case will stall due to his inability to find counsel to replace Mr. Bernstein. (Client St. at 1-2, ¶¶ 2, 3, 14). The numerous e-mails submitted as exhibits by both the plaintiff and his counsel, as well as the markedly different ways in which they describe the course of their relationship, reveal an attorney-client relationship that is beyond repair.

Nonetheless, in considering a motion to withdraw pursuant to Local Rule 1.4, the court must also consider "the posture of the case," and whether "'the prosecution of the suit is [likely to be] disrupted by the withdrawal of counsel.'" Whiting v. Lacara, 187 F.3d 317, 320-21 (2d Cir. 1999) (alteration in original) (quoting Brown v. National Survival Games, Inc., No. 91 CV 221, 1994 WL 660533, at *3 (N.D.N.Y. Nov. 18, 1994)). "The Court may also examine likely prejudice to the client, whether the motion is opposed, and whether the unpaid representation has become a severe financial hardship to the firm." Stair, 722 F. Supp. 2d at 265. Where discovery in a case has not yet closed and the case is not "'on the verge of trial readiness,'" prejudice is unlikely to be found. Blue Angel Films, Ltd. v. First Look Studios, Inc., No. 08 Civ. 6469, 2011 WL 672245, at *2 (S.D.N.Y. Feb. 17, 2011) (quoting Malarkey v. Texaco, Inc., No. 81 Civ. 5224, 1989 WL 88709, at *2 (S.D.N.Y. July 31, 1989)); see also Freund v. Weinstein, No. 08 CV 1469, 2009 WL 750242, at *1 (E.D.N.Y. March 19, 2009) ("[W]ithdrawal at this juncture will not substantially disrupt this litigation since discovery is in the early stages."); Brown, 1994

WL 660533, at *3 ("In the case at bar, although the parties have already commenced discovery, it is not complete and the case is not presently scheduled for trial.  Thus, granting the instant motion will not likely cause undue delay."); <u>Furlow v. City of New York</u>, No. 90 Civ. 3956, 1993 WL 88260, at *2 (S.D.N.Y. March 22, 1993) (where document discovery was complete but depositions had not been taken, withdrawal permissible because "this action is not trial ready and resolution of this matter will not be delayed substantially by counsel's withdrawal at this juncture"); <u>cf. Ghesani v. Trico VIII Petroleum, Inc.</u>, No. 03 Civ. 9854, 2005 WL 3117485, at *1 (S.D.N.Y. Nov. 22, 2005) ("To permit the requested withdrawal just prior to the trial would cause disruption to the Court's calendar and waste precious judicial resources.").

Here, although substantial discovery has taken place, discovery has not yet closed, and trial is still several months away.  Under these circumstances, the posture of the case does not require that the motion to withdraw be denied.  And, although Mr. Karimian may face hurdles obtaining replacement counsel (Client St. at 1, ¶ 6; 3; 9 & Exhs. at 3), this difficulty does not tip the scales in favor of denying the motion; with an appropriate stay, a new attorney should be able to become familiar with the case and proceed with representation of Mr. Karimian.  <u>See Moolick v. Natwest Bank, N.A.</u>, No. 95 Civ. 2226, 1996 WL 411691, at *3 (S.D.N.Y. July 23, 1996) ("The fact that a new lawyer would have to familiarize himself with the facts of that complex [] case, thereby increasing the costs of the litigation to the client, did not

create sufficient prejudice to warrant denying the application."
(discussing <u>Goldsmith v. Pyramid Communications, Inc.</u>, 362 F. Supp.
694, 698 (S.D.N.Y. 1973))).  Moreover, where an attorney desires to
withdraw from a case, he will in most cases be allowed to do so;
"'[w]hat amounts to specific performance by an attorney has been
required, but such cases are extremely rare.'"  <u>Moolick</u>, 1996 WL
411691, at *2 (quoting <u>Goldsmith</u>, 362 F. Supp. at 696); <u>accord</u>
<u>Welch v. Niagara Falls Gazette</u>, No. 98 CV 685E, 2000 WL 1737947, at
*3 (W.D.N.Y. Nov. 17, 2000); <u>Malarkey</u>, 1989 WL 88709, at *2.  This
is not a case in which the potential prejudice to the plaintiff or
disruption of the court's schedule is so great that withdrawal
should be denied.  <u>Cf.</u> <u>Welch</u>, 2000 WL 1737947, at *3 ("When a court
denies an attorney leave to withdraw it is usually because the
client's rights will be prejudiced by the delay necessitated in
obtaining replacement counsel or because the court's trial calendar
will be adversely affected.").

Mr. Bernstein has requested that Mr. Karimian be granted a
stay of sixty days in order to retain new counsel; this is an
appropriate means of alleviating any possible prejudice.[1]  <u>See</u>
<u>Furlow</u>, 1993 WL 88260, at *2 ("Plaintiff has stressed in his
letters to the Court that he is unable to prosecute his claim
without the assistance of counsel.  Accordingly, the Court grants
plaintiff thirty days to decide whether he will retain new counsel

---

[1] To the extent that Mr. Karimian's difficulty in finding
replacement counsel stems from any lien that Mr. Bernstein might
have on recovery in this action, that concern is addressed in the
next section.  (Client St. at 1, ¶ 6;  3).

or proceed <u>pro</u> <u>se</u>.").

      B.   <u>Charging Lien</u>

     In addition to requesting permission to withdraw as counsel, Mr. Bernstein seeks confirmation that he has a charging lien against the plaintiff's recovery in this case.  (Memorandum of Law in Support of Motion to Withdraw ("Counsel Memo.") at 1).  Under NYJL § 475,

> From the commencement of an action, . . . the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor . . . .  The court upon the petition of the client or attorney may determine and enforce the lien.

"The lien is predicated on the idea that the attorney has by his skill and effort obtained the judgment, and hence 'should have a lien thereon for his compensation, in analogy to the lien which a mechanic has upon any article which he manufactures.'"  <u>Butler, Fitzgerald & Potter v. Sequa Corp.</u>, 250 F.3d 171, 177 (2d Cir. 2001) (quoting <u>Williams v. Ingersoll</u>, 89 N.Y. 508, 517 (1882)). "The Second Circuit has made clear that Section 475 governs attorneys' charging liens in federal courts sitting in New York, and such liens are 'enforceable in federal courts in accordance with its interpretation by New York courts.'"  <u>Stair</u>, 722 F. Supp. 2d at 267 (quoting <u>Itar-Tass Russian News Agency v. Russian Kurier, Inc.</u>, 140 F.3d 442, 449 (2d Cir. 1998)).

     Counsel who withdraw voluntarily are entitled to enforce this charging lien, provided that the withdrawal is for "good and sufficient cause."  <u>Benvenisti</u>, 2006 WL 44039, at *2.  Although

8

attorneys who withdraw without good cause may still be entitled to equitable remuneration for work performed in the case, see Louima v. City of New York, No. 98 CV 5083, 2004 WL 2359943, at *3 (E.D.N.Y. Oct. 5, 2004), withdrawal without good cause generally forfeits an attorney's right to a charging lien, Antonmarchi v. Consolidated Edison Co. of New York, 678 F. Supp. 2d 235, 241 (S.D.N.Y. 2010); Petition of Harley & Browne, 957 F. Supp. 44, 48 (S.D.N.Y. 1997); Marrero v. Christiano, 575 F. Supp. 837, 840 (S.D.N.Y. 1983).

"[A] few courts have suggested that the 'good cause' inquiry with respect to a charging lien reflects a higher standard than the 'satisfactory reason' required to successfully withdraw as counsel under Local Civil Rule 1.4." Stair, 722 F. Supp. 2d at 268 (citing Diarama Trading Co., 2005 WL 1963945, at *3, and Hallmark Capital Corp., 1997 WL 661146, at *3); accord Melnick v. Press, No. 06 CV 6686, 2009 WL 2824586, at *3 (E.D.N.Y. Aug. 28, 2009) (same). Under New York law, good cause for withdrawal exists where there are "irreconcilable differences . . . with respect to the proper course to be pursued in [the] litigation," where "the client flatly challenged [counsel's] loyalty and professional integrity," or where "the relationship between plaintiff[s] and [their] attorney ha[s] deteriorated to the point where further representation [is] inappropriate." Lake v. M.P.C. Trucking Inc., 279 A.D.2d 813, 814, 718 N.Y.S.2d 903, 904 (3d Dep't 2001) (alterations in original) (internal quotation marks omitted). However, withdrawal based on a client's "unreasonably difficult" behavior is permitted only in

relatively extreme situations, for example where the client hired "new or additional counsel who interferes with the strategies of the original attorney." Louima, 2004 WL 2359943, at *61 ; see also Joseph Brenner Associates, Inc. v. Starmaker Entertainment, Inc., 82 F.3d 55, 57 (2d Cir. 1996).

The current record in this case does not clearly establish that Mr. Karimian "render[ed] the representation unreasonably difficult for the lawyer to carry out employment effectively." N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0, R. 1.16(c)(7); see also Ferdico v. Zweig, 82 A.D.3d 1151, 1153, 919 N.Y.S.2d 521, 523 (2d Dep't 2011). Although Mr. Bernstein has alleged that Mr. Karimian was "uncooperative" (Bernstein Aff., ¶¶ 13, 18, 21-25, 62), Mr. Karimian has argued that he was "responsive to Mr. Bernstein's phone calls and requests." (Client St. at 3; 6, ¶ 1; 8, ¶¶ 9-11). Additionally, while Mr. Bernstein alleges that Mr. Karimian "sought to dictate the course of the litigation" (Bernstein Aff., ¶¶ 13, 30, 48-50), there is little evidence of such behavior. Further, Mr. Karimian has argued in rebuttal that Mr. Bernstein relied on him to review documents and perform other tasks properly performed by an attorney, and that he performed such tasks at the behest of Mr. Bernstein. (Client St. at 5, ¶ 12; 10, ¶¶ 6, 7; 11-12, ¶¶ 14, 16-17). Finally, Mr. Bernstein details several interactions in which the plaintiff criticized him or was hostile. (Bernstein Aff., ¶¶ 19, 26, 58, 72-73). While these interactions have undoubtedly served to create irreconcilable differences between the plaintiff and counsel (Bernstein Aff.,

¶¶ 27, 28, 32, 34, 36, 38, 60, 74), it is not clear whether they rise to the a level of good cause required to overcome an attorney's responsibility to persist in a representation already begun. See Louima, 2004 WL 2359943, at *59 ("The law is clear that when an attorney has been retained in a legal matter, he 'cannot abandon the service of his client without justifiable cause, and reasonable notice.'" (quoting Tenney v. Berger, 93 N.Y. 524, 529 (1883))); Johnson v. Laborde, No. 40512/03, 2009 WL 1298147, at *2 (N.Y. Sup. Ct. May 3, 2009) ("'The relationship between client and lawyer is such that the client may discharge the attorney at any time with or without cause, while the lawyer may withdraw only for good reason.'" (quoting Schwartz v. Jones, 58 Misc. 2d 998, 999, 297 N.Y.S.2d 275, 276 (Nassau Sup. Ct. 1969))); see also Willis v. Holder, 43 A.D.3d 1441, 1441, 842 N.Y.S.2d 841, 842 (4th Dep't 2007) (holding retainer agreement cannot override requirement that attorney demonstrate "good and sufficient cause" for withdrawal). Moreover, Mr. Karimian indicates that he and Mr. Bernstein enjoyed many months of successful collaboration, including numerous meetings, phone conversations, and email exchanges. (Client St. at 3).

When a "material issue[] of fact" is raised, an evidentiary hearing may be necessary in order to determine whether an attorney had good cause to withdraw. Klagsbrun v. Klagsbrun, 192 A.D.2d 306, 306, 595 N.Y.S.2d 456, 457 (1st Dep't 1993); see also Antonmarchi, 678 F. Supp. 2d at 241 ("'A hearing is required to determine if [an attorney] was discharged for cause, and, if not,

11

the amount of his fee on a quantum meruit basis.'" (alteration in original) (quoting <u>Mason v. City of New York</u>, 67 A.D.3d 475, 475, 889 N.Y.S.2d 24, 25 (1st Dep't 2009))).  In any event, the amount of a charging lien is often set only after recovery in a particular case, <u>see, e.g.,</u> <u>Antonmarchi</u>, 678 F. Supp. 2d at 243, and that is all that Mr. Bernstein requests here.  (Counsel Memo. at 1).

Given disputes as to both the existence of "good cause" for withdrawal and the amount of any charging lien that might be warranted, these determinations shall be deferred until after any recovery that might occur.  <u>See, e.g.,</u> <u>Hallmark</u>, 1997 WL 661146, at *3-4 (noting that "if the client and counsel have irreconcilable differences, that is a satisfactory reason to allow counsel to withdraw," but that "[i]n deciding the withdrawal motion, it is not necessary for the Court to decide who or what caused the irreconcilable differences, which goes only to 'good cause' for charging lien purposes" and reserving decision on that issue).

C.   <u>Retaining Lien</u>

Mr. Bernstein also requests that the court confirm that he has a retaining lien against Mr. Karimian's file for $1,313.13, the amount he contends is owed to him for outstanding expenses incurred litigating Mr. Karimian's case.  (Counsel Memo. at 1, 10-11; Billing Statement dated March 15, 2011, attached as part of Exh. 3 to Bernstein Aff., at 2; Invoice dated March 8, 2011, attached as part of Exh. 12 to Bernstein Aff.).  "New York cases recognize 'a distinct common law "retaining lien" that allows withdrawing counsel to retain pleadings and other documents in counsel's

12

possession until counsel is paid for his or her work.'" <u>Allstate</u>
<u>Insurance Co. v. Nandi</u>, 258 F. Supp. 2d 309, 311 (S.D.N.Y. 2003)
(quoting <u>Rivkin v. A.J. Hollander & Co.</u>, No. 95 Civ. 9314, 1996 WL
633217, at *2 (S.D.N.Y. Nov. 1, 1996)).   Unless a client can
demonstrate exigent circumstances, counsel need not release papers
subject to the lien until his fee has been paid or secured.   <u>Id.</u> at
312.   If a client can demonstrate indigence, a court may limit a
withdrawing attorney's remedy to the statutory charging lien, to be
recovered on "proceeds of the action," in order to facilitate
continued prosecution.   <u>Stair</u>, 722 F. Supp. 2d at 277.

Although Mr. Karimian argues that his unemployment and
resulting financial troubles render him unable to pay for his legal
expenses (Client St. at 4, ¶¶ 3-4), he has not sufficiently
substantiated his indigence, particularly in light of the modest
amount of the retaining lien requested by Mr. Bernstein and the
grant of $4,000 that the plaintiff received from the National
Employment Lawyers Association of New York (Letter of Tracey S.
Bernstein dated May 2, 2011).[2]   The plaintiff claims that he has
expended a portion of that grant on various "expenses related to
this trial" and requests that he be "permitted to use the balance
of [the] grant toward securing replacement counsel and other
related trial costs." (Client St. at 2, ¶ 13; 4-5, ¶ 7).   He
further asserts that, subsequent to his retention, Mr. Bernstein

---

[2] Mr. Karimian also requests that this lien be offset by the
cost of a digital recorder "purchased at Mr. Bernstein's direction
and promise to pay for the device." (Client. St. at 2, ¶ 11).
However, he has not documented any such request by Mr. Bernstein or
the cost of the device.   Therefore, this request is denied.

"verbally agreed" to cover the costs of the depositions in Mr. Karimian's case.   (Client St. at 4, ¶ 6).   However, this unsupported assertion is contradicted by the retainer agreement, signed by the plaintiff, which guarantees that he will pay "for all costs and disbursements incurred in connection with these matters," including "deposition expenses."   (Retainer Agreement at 1). Moreover, it is appropriate that the plaintiff be required to use his grant to discharge his debt to his outgoing attorney for expenses already incurred in the pursuit of his claims.   Therefore, Mr. Bernstein's request for a retaining lien in the amount of $1313.13 is granted.

     D.   <u>Sealing</u>

     Finally, Mr. Bernstein has requested that any affidavits, exhibits, and memoranda submitted in connection with this motion be sealed.   (Counsel Memo. at 1).   "[D]ocuments in support of motions to withdraw as counsel are routinely filed under seal where necessary to preserve the confidentiality of the attorney-client relationship between a party and its counsel, and [] this method is viewed favorably by the courts."   <u>Team Obsolete Ltd. v. A.H.R.M.A. Ltd.</u>, 464 F. Supp. 2d 164, 165 (E.D.N.Y. 2006).   Particularly because the defendants have taken no position on Mr. Bernstein's motion to withdraw (Letter of Marjorie Kaye, Jr. dated March 28, 2011), that request is granted.

<u>Conclusion</u>

     For the reasons set forth above, Mr. Bernstein's motion to withdraw is granted, his request for a retaining lien is granted,

and the papers submitted in connection with this motion shall be sealed.  His motion for a charging lien is denied without prejudice to renewal following a determination on the merits in the underlying action.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          May 11, 2011

Copies mailed this date to:

Tracey S. Bernstein, Esq.
Himmel & Bernstein, LLP
928 Broadway, Suite 1000
New York, New York  10010

Bijan Karimian
240 East 76th Street, #6R
New York, New York  10021

Gena B. Usenheimer, Esq.
Marjorie N. Kaye, Jr., Esq.
Jackson Lewis LLP
666 Third Avenue, 29th Floor
New York, New York  10017