UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BIJAN KARIMIAN,<br><br>                    Plaintiff,<br><br>          v.<br><br>TIME EQUITIES, INC., FRANCIS GREENBURGER, ROBERT KANTOR AND HYMAN SCHERMER.<br><br>                    Defendants. | Civil Action No.: 10 Civ. 3773 (AKH)<br>ECF CASE |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

JACKSON LEWIS LLP
666 Third Avenue, 29th Floor
New York, New York 10017
(212) 545-4000
Marjorie Kaye, Jr. (MK 7141)
Gena Usenheimer (GU 4969)
ATTORNEYS FOR DEFENDANTS·

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF RELEVANT FACTS ................................................................... 3

I.      BACKGROUND INFORMATION ABOUT TIME EQUITIES. ....................................... 3

II.     PLAINTIFF'S EMPLOYMENT WITH TIME EQUITIES. ............................................. 3

III.    ALLEGED HOSTILE WORK ENVIRONMENT. ........................................................ 5

IV.     TIME EQUITIES UNDERTAKES DRASTIC COST REDUCTION MEASURES IN
        THE FALL OF 2008. .......................................................................................... 5

V.      PLAINTIFF'S 2008 PERFORMANCE EVALUATION. ................................................ 7

VI.     THE COMPENSATION COMMITTEE MEETS ON DECEMBER 11, 2008. .................. 9

VII.    PLAINTIFF'S ALLEGED COMPLAINT TO GREENBURGER ON
        DECEMBER 12, 2008. ...................................................................................... 10

VIII.   THE DECISION TO TERMINATE PLAINTIFF'S EMPLOYMENT. ............................. 10

IX.     CONTINUED COST REDUCTION POLICIES AT TIME EQUITIES. ........................... 12

X.      HEMOSENSE STOCK. ...................................................................................... 13

APPLICABLE LEGAL STANDARD ..................................................................... 13

LEGAL ARGUMENT ............................................................................................ 14

I.      PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM BASED
        UPON A SINGLE ALLEGED COMMENT BY HYMAN SCHERMER
        FAILS AS A MATTER OF LAW. ......................................................................... 14

        A.  Plaintiff's Federal and State Hostile Work Environment Claims Fail. .............. 14

        B.  Plaintiff's Hostile Work Environment Claim Under the NYCHRL Fails.......... 16

        C.  Plaintiff's Discrimination Claims Against The Individually Named Defendants
            Should Be Dismissed........................................................................................ 18

i

II.    PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE OF RETALIATION..... 18

   A.  Plaintiff Cannot Establish he Participated in a Protected Activity.................................... 18

   B.  Plaintiff's December 12, 2008 Complaint to Greenburger Was Not Made in
       Good Faith........................................................................................................... 19

   C.  Plaintiff's Complaint to Greenburger Was Not Objectively Reasonable........................... 21

   D.  Plaintiff Cannot Establish Causation................................................................... 22

III.   Plaintiff Has Not Established Defendants' Legitimate Non Retaliatory Business
       Reasons Supporting His Termination Are a Pretext for Retaliatory Animus. ................... 23

IV.    PLAINTIFF'S BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED. .......... 25

V.     PLAINTIFF'S QUASI CONTRACT CLAIM SHOULD BE DISMISSED. ................... 26

CONCLUSION................................................................................................................ 28

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alfano v. Costello,*
  294 F.3d 365 (2d Cir. 2002)..................................................................................15

*Alvarez v. Rosa,*
  11 CIV. 3818 (KBF), 2012 U.S. Dist. LEXIS 25693 (S.D.N.Y. Feb. 28, 2012)....................18

*Aniero Concrete Co. v. Aetna Cas. & Sur. Co.,*
  94 Civ. 9111 (CSH), 2002 U.S. Dist. LEXIS 20527 (S.D.N.Y. Oct. 24, 2002)....................26

*Bandhan v. Lab. Corp. of Am.,*
  99 Civ. 12086 (RMB)(GAY), 2002 U.S. Dist. LEXIS 25972 (S.D.N.Y. Mar. 27,
  2002) ......................................................................................................23

*Blanco v. Brogan,*
  620 F. Supp. 2d 546 (S.D.N.Y. 2009)..........................................................................18

*Brennan v. Metro. Opera Ass'n,*
  192 F.3d 310 (2d Cir. 1999)..................................................................................15

*Carey v. Crescenzi,*
  923 F.2d 18 (2d Cir. 1991)..................................................................................14

*Darrell v. Con Edison,*
  10 Civ. 1866 (KBF), 2012 U.S. Dist. LEXIS 16395 (S.D.N.Y. Feb. 7, 2012)....................24

*De Los Santos v. City of New York,*
  482 F. Supp. 2d 346 (S.D.N.Y. 2007).........................................................................21

*Deters v. Lafuente,*
  368 F.3d 185 (2d Cir. 2004)..................................................................................15

*Farias v. Instructional Sys., Inc.,*
  259 F.3d 91 (2d Cir. 2001)..................................................................................18

*Forsyth v. Federation Emp't & Guidance Serv.,*
  409 F.3d 565 (2d Cir. 2005)..................................................................................14

*Geraldi v. Melamid,*
  212 A.D.2d 575 (2d Dep't 1995) ..........................................................................27

*Goldman v. Metro. Life Ins. Co.,*
  5 N.Y.3d 561 (2005) ........................................................................................26

*Gould v. Lightstone Value Plus Real Estate Inv. Trust, Inc.,*
   301 Fed. Appx. 97 (2d Cir. 2008)..................................................................26

*Holtz v. Rockefeller Ctr., Inc.,*
   258 F.3d 62 (2d Cir. 2001)..........................................................................18

*Kern v. City of Rochester,*
   93 F.3d 38 (2d Cir. 1996)............................................................................27

*Lessambo v. PricewaterhouseCoopers, L.P.,*
   08 Civ. 6272 (WHP) 2010 U.S. Dist. LEXIS 107827, *aff'd in part and appeal
   dismissed in part*, 451 Fed. Appx. 57 (2d Cir. 2011)..................................24

*Magnoni v. Smith & Laquercia, LLP,*
   701 F. Supp. 2d 497 (S.D.N.Y. 2010), *aff'd*, No. 10-1103-cv, 2012 U.S. App. LEXIS
   10344 (2d. Cir. May 23, 2012) ....................................................................17

*Malaney v. El Al Isr. Airlines,*
   331 Fed. Appx. 772 (2d Cir. 2009)..............................................................22

*Mayers v. Emigrant Bancorp, Inc.,*
   796 F. Supp. 2d 434 (S.D.N.Y. 2011).............................................19, 21, 22

*McDonnell Douglas Corp. v. Green,*
   411 U.S. 792 (1973).....................................................................................18

*Meiri v. Dacon,*
   759 F.2d 989 (2d Cir. 1985).........................................................................23

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,*
   09 Civ. 1251 (DAB), 2011 U.S. Dist. LEXIS 84790 (S.D.N.Y. July 28, 2011) ....................17

*Newsom-Lang v. Warren Int'l, Inc.,*
   80 Fed. Appx. 124 (2d Cir. 2003).................................................................24

*Panzarino v. Deloitte & Touche LLP,*
   05 Civ. 8502 (BSJ) (RLE),
   2009 U.S. Dist. LEXIS 101209 (S.D.N.Y. Oct. 29, 2009) ...................15, 16, 17

*Petrosino v. Bell Atl.,*
   385 F.3d 210 (2d Cir. 2004).........................................................................15

*Phillip v. City of New York,*
   09 Civ. 442, 2012 U.S. Dist. LEXIS 55335 (E.D.N.Y. Apr. 19, 2012) *claim
   dismissed*, 09 Civ. 442, 2012 U.S. Dist. LEXIS 63966 (E.D.N.Y. May 7, 2012)...................15

*Ricard v. Kraft Gen. Foods, Inc.,*
   No. 92 Civ. 2256 (GLG), 1993 U.S. Dist. LEXIS 21062 (S.D.N.Y. Mar. 16, 1993)..............15

*Sims v. City of New York*,
    08 Civ. 5965, 2010 U.S. Dist. LEXIS 103536 (S.D.N.Y. Sept. 29, 2010) ........................13, 16

*Slattery v. Swiss Reinsurance Am. Corp.*,
    248 F.3d 87 (2d Cir. 2001) ...............................................................................................22

*Spadola v. N.Y.C. Transit Auth.*,
    242 F. Supp. 2d 284 (S.D.N.Y. 2003) ..............................................................21, 22, 23

*Springle v. Metro. Transp. Auth.*,
    06 Civ. 734 (GEL), 2008 U.S. Dist. LEXIS 7875 (S.D.N.Y., Feb. 1, 2009)....................21, 22

*Weinrich v. Sandhaus*,
    850 F. Supp. 1169 (S.D.N.Y. 1994) *amended, mot. denied, in part*, 156 F.R.D. 60
    (S.D.N.Y. 1994) ...............................................................................................................27

*Williams v. N.Y.C. Hous. Auth.*,
    61 A.D.3d 62, 872 N.Y.S. 2d 27 (1st Dep't 2009), *leave to appeal denied*, 13 N.Y.3d
    702, 885 N.Y.S.2d 716 (2009) ..........................................................................................16

*Wilson v. N.Y.P. Holdings, Inc.*,
    No. 05 Civ. 10355, 2009 U.S. Dist. LEXIS 28876, 2009 WL 873206 (S.D.N.Y. Mar.
    31, 2009), *aff'd, Watson v. N.Y. Pressman's Union No. 2, NYP Holdings, Inc.*, 444
    Fed Appx. 500 (2d Cir. 2011) ...........................................................................................17

*Wimmer v. Suffolk Cnty. Police Dep't*,
    176 F.3d 125 (2d Cir. 1999)..............................................................................................22

Defendants Time Equities, Inc. ("Time Equities" or "TEI"), Francis Greenburger ("Greenburger"), Robert Kantor ("Kantor") and Hyman Schermer ("Schermer") (collectively hereinafter "Defendants") respectfully submit this Memorandum of Law in Support of their Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP").

### Preliminary Statement

In this action, Plaintiff Bijan Karimian ("Plaintiff"), a former Time Equities employee, asserts a hostile work environment claim based on his race, national origin and gender as well as a retaliation claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law, New York State Executive Law § 296 ("NYSHRL") and the New York City Administrative Code § 8-107 ("NYCHRL").

Despite Plaintiff's efforts to complicate this case, the facts are very simple: in November 2006, Greenburger, owner and CEO of Time Equities, hired Plaintiff. On January 14, 2009, Greenburger terminated Plaintiff's employment as a result of the economic downturn following the collapse of Lehman Brothers. Plaintiff was one of seventeen Time Equities employees who were laid off between 2008 and 2009. Plaintiff offers absolutely no evidence of discriminatory or retaliatory animus in this case, relying instead upon conclusory allegations, unsupported speculation and his own subjective opinion as to the quality of his job performance. For these reasons, Plaintiff's Amended Complaint should be dismissed with prejudice.

Specifically, Plaintiff claims that in January 2008, Defendant Hyman Schermer ("Schermer"), a colleague of Plaintiff's, who was not Plaintiff's supervisor and who is not an employee of Time Equities, said "I am going to f*** you in your little Iranian ass" and made two comments about the possibility of war between Iran and Israel. Schermer denies making the alleged comment, but even assuming the allegations are true, the alleged comments are nothing

1

more than petty slights or trivial inconveniences and are insufficient to establish claims for hostile work environment under Title VII, the NYSHRL or the NYCHRL.

Similarly, no facts support Plaintiff's claim of retaliation. Plaintiff claims that on December 12, 2008 he complained to Greenburger about the comment Schermer allegedly made relative to Plaintiff's Iranian heritage, and that he was subsequently laid off on January 14, 2009 as a result of this complaint. The facts do not support this claim. Specifically, Plaintiff cannot establish his complaint was made in good faith since Plaintiff first complained twelve months *after* the comment was allegedly made following a performance evaluation in which Plaintiff was directed to look for another job. In addition, Plaintiff cannot establish his alleged complaint was objectively reasonable since no rational person could believe that a single isolated remark, made twelve months prior, could constitute a hostile work environment.

In addition, it is undisputed that as early as October 2008, Time Equities was undergoing significant cost cutting measures including across the board staff and salary reductions leading to part time work schedules for many employees. It is further undisputed that Plaintiff was identified for layoff months prior to his alleged participation in a protected activity. Plaintiff identifies no evidence to establish that Defendants' legitimate, non retaliatory business reason supporting the need for companywide reduction in costs, including salary reductions and layoffs was merely a pretext to retaliate against Plaintiff. For these reasons, and those more fully articulated below, Plaintiff's retaliation claim should be dismissed.

## STATEMENT OF RELEVANT FACTS[1]

**I.      BACKGROUND INFORMATION ABOUT TIME EQUITIES.**

Time Equities is a national real estate company founded in 1966 by Francis Greenburger with its headquarters in New York City. SUMF at ¶ 1. Time Equities is an equal opportunity employer which prohibits discrimination or harassment of any kind as well as retaliation and which maintains and distributes to all employees its policy prohibiting discrimination and retaliation. SUMF at ¶¶ 2-3. At the time of his hire, Plaintiff received a copy of Defendant's anti-harassment policy. SUMF at ¶ 3.

Francis Greenburger is the CEO and Chairman of Time Equities and is responsible for setting broad policies and objectives for the company and for reviewing major transactions as well as for approving operational decisions. SUMF at ¶¶ 5-6. Robert Kantor is the President of Time Equities and is responsible for administering the day to day operations of Time Equities and specifically supervises the office, accounting, legal and computer/technical departments. SUMF at ¶ 7. Kantor also enforces the anti-harassment and anti-retaliation policies at Time Equities. SUMF at ¶ 8. Hy Schermer is an independent contractor with Time Equities and has had been for fifteen years. SUMF at ¶ 9. Schermer never supervised Plaintiff. SUMF at ¶ 10.

**II.     PLAINTIFF'S EMPLOYMENT WITH TIME EQUITIES.**

Plaintiff, who is of Iranian descent, was hired by Greenburger in November 2006 as an Associate Director at a base salary of $120,000.00. SUMF at ¶ 11. Plaintiff's primary role was to function as a financial analyst for Greenburger by analyzing properties Greenburger selected as possible acquisitions and otherwise assisting Greenburger in his acquisitions. SUMF

---

[1] The following is a summary of the material facts, which are set forth in more detail in Defendant's Rule 56.1 Statement of Undisputed Material Facts submitted herewith and referred to herein as "SUMF ¶ _."

at ¶ 12.  However, Plaintiff also had limited responsibilities for independently identifying and recommending properties for acquisition.  *See id.*  Plaintiff reported directly to Greenburger and worked with him "virtually every day."  SUMF at ¶ 13.

In or around November 2007, Plaintiff received a satisfactory performance evaluation.  SUMF at ¶ 14.  However, Greenburger advised Plaintiff he had not completed tasks within his job description, such as improving the Time Equities underwriting proforma formats and working on non-NYC office building acquisitions.  SUMF at ¶ 15.  Plaintiff received a $75,000.00 bonus for his work throughout the 2006 to 2007 year as well as an increase in his annual base salary from $120,000 to $140,000.00.  SUMF at ¶ 16.  In connection with his 2007 evaluation, Plaintiff requested a title change to "Director of Acquisitions" which Greenburger denied commenting, "[a]lthough I am flexible as to exact title, Director of Acquisitions is not acceptable since it would imply that other acquisition managers report to you."  SUMF at ¶¶ 17-18.  Instead, Greenburger approved a title modification to "Project Director, Acquisitions."  SUMF at ¶ 18.

In connection with his 2007 evaluation, Plaintiff proposed a compensation structure for the 2008 calendar year which included a discretionary bonus of between 30% and 50% of his base salary.  SUMF at ¶ 19.  Greenburger denied this proposed compensation structure, specifically instructing Plaintiff that "future bonuses . . . will have to be decided on a case by case basis.  The amounts indicated in your memo are excessive. . . ."  SUMF at ¶ 20.

Plaintiff testified that he and Greenburger had a good relationship in or around December 2008/January 2009.  SUMF at ¶ 21   It is undisputed, however, that the remaining staff members at Time Equities disliked Plaintiff.  SUMF at ¶ 22.

### III.    ALLEGED HOSTILE WORK ENVIRONMENT.

Plaintiff alleges that in or around January and/or February 2008, Schermer said to him "I'm going to fuck you in your little Iranian ass." SUMF at ¶ 23. Schermer denies making this comment or any comments to Plaintiff about his national origin or race. SUMF at ¶ 24. Although Plaintiff alleges Chris Pulling, an analyst for Time Equities, witnessed this comment, Pulling denies witnessing any such comment. SUMF at ¶¶ 25-26.    In his Charge of Discrimination submitted to the Equal Employment Opportunity Commission ("EEOC") - - a writing which is the most contemporaneous of Plaintiff's submissions regarding his claims in this action - - Plaintiff identified only this single comment in support of his claim of his hostile work environment claim. SUMF at ¶¶ 27-28. At his deposition, however, Plaintiff testified that Schermer made two additional comments regarding the possibility of war between Iran and Israel which Plaintiff believed to be discriminatory. SUMF at ¶ 29. Plaintiff admits these two comments could have been political in nature. SUMF at ¶ 29. Schermer denies making comments to Plaintiff about the possibility of war between Iran and Israel. SUMF at ¶ 30.

### IV.    TIME EQUITIES UNDERTAKES DRASTIC COST REDUCTION MEASURES IN THE FALL OF 2008.

In response to the downward economy and accompanying restriction on available credit resulting from the collapse of Lehman Brothers in the fall of 2008, Time Equities undertook a number of fiscal constraints and cost reduction measures. SUMF at ¶¶ 33-43, 65-66, 70-71.    Indeed, post-Lehman Brothers, Time Equities implemented a strategy to reduce acquisitions for the following year in order to "stav[e] off financial ruin." SUMF at ¶ 33. Greenburger describes the time period between the fall of 2008 and early 2009 as "tumultuous" and testified that he addressed "a lot of budget and staffing issues, and, you know, [was] really,

on a daily basis, look[ing] at lists [of employees] . . . who might be laid off or how we could downsize. . ." SUMF at ¶ 34.

For example, Kantor issued a memorandum dated December 2, 2008 to all Time Equities staff setting forth various cost reduction measures, including a cap on salary increases in 2008 to 3%. SUMF at ¶ 35. The December 2nd memo further instructs "[a]ll other compensation matters will be handled on a case by case basis but be subject to review and approval by Francis and myself. Incentive compensation will be paid pursuant to current agreements but bonus amounts shall be reduced." SUMF at ¶ 36. Plaintiff received this memo and understood it applied to all Time Equities employees and that in light of the financial crisis and in the context of these December memoranda, his 2008 compensation could be impacted. SUMF at ¶¶ 36-37.

On or about December 4, 2008, Kantor generated a spreadsheet listing a number of employees in the Acquisitions and Asset Management departments and assigned each employee a "utilization rating." SUMF at ¶ 38. Out of the twenty-three employees listed, three employees, including Plaintiff, were evaluated with a utilization rating of "very low" and of those three employees, Plaintiff earned the highest salary and earned $90,000.00 more than the other employee in Acquisitions. SUMF at ¶ 39.

Thereafter, on or around December 8, 2008, Kantor issued a second memorandum to all staff describing the "unprecedented turbulent" economy and highlighting the "exceedingly tight credit markets which will result in much less real estate activity for the foreseeable future." SUMF at ¶ 40. The December 8th memo also articulated various cost cutting measures under consideration, including reducing staff ("there is no doubt we will be making job cuts") in areas which "have experienced the greatest reduction in activity." SUMF at ¶ 41.

The memo also provides that prior to making job cuts, "we wonder whether some employees would actually prefer to reduce their role from full time to part time and work on a flex time basis pursuant to an agreed upon schedule that meets the needs of the company and themselves." SUMF at ¶ 42. The memo also invites any employees who are interested in a part time schedule to affirmatively raise the issue with their supervisor(s). *See id.* At his deposition, Plaintiff acknowledged this memo may have indicated Time Equities was having financial problems. SUMF at ¶ 43.

## V.   PLAINTIFF'S 2008 PERFORMANCE EVALUATION.

In the fall and winter of 2008, Greenburger and Plaintiff met on four occasions to asses Plaintiff's job performance throughout 2008. Specifically, they met on November 10 and 13 and December 1 and 10. SUMF at ¶ 44. Plaintiff secretly tape recorded all four meetings without Greenburger's knowledge or consent. SUMF at ¶ 45. During these discussions, Plaintiff did not complain about discrimination or any of the alleged discriminatory comments described above during these evaluation meetings. SUMF at ¶ 46.

During the course of Plaintiff's evaluation meetings, Greenburger noted his observation that Plaintiff and Schermer did not get along. SUMF at ¶ 47. Plaintiff responded by telling Greenburger that his relationship with Schermer "has no impact on anything" and suggested taking Schermer out for a beer. SUMF at ¶ 47. Greenburger also criticized Plaintiff's job performance. For example, Greenburger told Plaintiff he had never suggested properties for acquisition that Greenburger was impressed with. SUMF at ¶¶ 49-50. Indeed, Plaintiff admits none of the real estate transactions Plaintiff recommended in 2008 were acquired. SUMF at ¶ 50.

During these evaluation meetings, Greenburger also reiterated his criticism from 2007 when he told Plaintiff he was not focusing on tasks he is responsible for, such as

7

developing a companywide financial model, noting the model was incomplete because Plaintiff was "motivated in doing your own thing which is not part of your job descriptions." SUMF at ¶ 51. By the November 13th meeting, Plaintiff was aware that two employees had been laid off and he asked Greenburger whether he anticipated additional layoffs. SUMF at ¶ 52. Specifically, Plaintiff asked Greenburger, don't you "think there are people who should just be laid off [] because they are unproductive and useless." SUMF at ¶ 52.

Also, at the second evaluation meeting, Greenburger stressed his concern about paying base salaries for his staff and in response to Plaintiff's insistence that he receive a larger bonus, Greenburger advised that he "is not interested in changing the bonus structure." SUMF at ¶ 53. Greenburger also asked Plaintiff whether Plaintiff was happy at Time Equities, and whether the position was "right" for him because of Plaintiff's high level of negativity. SUMF at ¶ 54. Greenburger advised Plaintiff he "wasn't comfortable" around Plaintiff's level of frustration and told Plaintiff he "can't have someone working for him who doesn't respect him." SUMF at ¶ 55. Greenburger also indicated that Plaintiff doesn't give "credence" to Greenburger's experience or point of view and that Plaintiff does not take feedback well or listen to points of view that are contrary to his own. SUMF at ¶ 56. Plaintiff, however, did not agree with Greenburger's assessment of his performance and announced: "I don't think there's anyone here [at Time Equities] who can compare to me." SUMF at ¶ 57.

During these meetings, Plaintiff also told Greenbuger that he had millions of ideas that he didn't see the upside in sharing without being compensated. SUMF at ¶ 58. Greenburger responded by telling Plaintiff that is why he receives a salary. *See id.* In addition, Plaintiff generated a memorandum entitled "Francis' mistakes" to review with Greenburger. SUMF at ¶ 59. Plaintiff "explained" in his deposition that he prepared this list of mistakes in order to

improve his working relationship with Greenburger.  SUMF at ¶ 59.  In response to this list of mistakes, Greenburger apologized to Plaintiff explaining that it was never his intention to treat Plaintiff in any way that was unfair.  SUMF at ¶ 60.

Greenburger asked Robert Kantor to attend the third meeting with Plaintiff, which took place on December 1, 2008 because he felt discussions had proceeded in "an unsatisfactory fashion" and believed it would be helpful to have a third person in the room.  SUMF at ¶ 61.  During this meeting, Greenburger told Plaintiff "he was not happy with the way things were going" with Plaintiff and that he was "not quite sure where to go from here" because Plaintiff made Greenburger "very uncomfortable."  SUMF at ¶ 62.  Kantor specifically recalls that Plaintiff requested a substantial bonus that Greenburger was not willing to pay.  SUMF at ¶ 63.

The fourth and final evaluation discussion took place on December 10, 2012.  SUMF at ¶ 64.  During this discussion, Greenburger advised Plaintiff he was considering a host of options designed to reduce costs, including across the board reductions in salary, modifications to base salaries and even layoffs and noted there would be a certain "level of pain."  SUMF at ¶ 65.  Greenburger also commented that the likelihood of Plaintiff continuing in his position at his current salary level was low.  SUMF at ¶ 66.  Despite Greenburger's demonstrated focus on reducing costs, Plaintiff persisted in his request for increased compensation and instructed Greenburger: "if you feel like after, you know, the things I've done this past year, or the work I've done, if you feel like you're going to lay me off, then why don't we – why don't you do that now."  SUMF at ¶ 67.

## VI.    THE COMPENSATION COMMITTEE MEETS ON DECEMBER 11, 2008.

On or around, December 8, 2008, Greenburger formed a "compensation committee" comprised of various department heads designed to "implement necessary payroll reductions due to the recession."  SUMF at ¶ 69.  Anticipated strategies included "[l]aying off

certain positions;" "[c]onsolidated job responsibilities between positions;""[c]onverting certain positions to part-time (flex-time);" "[r]educing salaries;" "[c]onverting certain position from fixed salary to incentive based." *See id.* The first meeting of the compensation committee occurred on Thursday December 11, 2008. SUMF at ¶ 70.

## VII. PLAINTIFF'S ALLEGED COMPLAINT TO GREENBURGER ON DECEMBER 12, 2008.

Although Plaintiff tape recorded the four evaluation meetings, at no time during those meetings, did Plaintiff advise Greenburger of any of the allegedly discriminatory comments of which he complains in this action. SUMF at ¶ 70. Indeed, at the second performance evaluation meeting, Plaintiff attributes his personal issues with Schermer to the fact that Schermer didn't like having to share an analyst, Chris Pulling, with Plaintiff. SUMF at ¶ 48. Nevertheless, in this action, Plaintiff alleges that on December 12, 2008 he told Greenburger that Schermer said to him "I'm going to f*** you . . . ." SUMF at ¶ 71. Greenburger denies that Plaintiff ever complained to him about this comment. SUMF at ¶ 72. Even though Plaintiff met with Greenburger for the express purpose of complaining about Schermer, he did not record this conversation. SUMF at ¶ 73. Plaintiff alleges that in response to his complaint, Greenburger advised Plaintiff of his right to file an internal complaint against Schermer, an option which Plaintiff did not pursue. SUMF at ¶ 74.

## VIII. THE DECISION TO TERMINATE PLAINTIFF'S EMPLOYMENT.

Throughout the fall of 2008 and early 2009, Kantor and Greenburger engaged in a series of discussions regarding the implementation of cost reduction measures and the need for layoffs. SUMF at ¶ 75. With respect to layoffs, Kantor and Greenburger discussed all Time Equities employees, especially the highly compensated employees - - including Plaintiff - - and solicited feedback from department heads and senior Time Equities employees. SUMF at ¶ 76.

Greenburger was responsible for making decisions with respect to layoffs for those employees who reported to him. SUMF at ¶ 77. Layoff decisions were made based upon anticipated work flow and the need to reduce costs. SUMF at ¶ 78.

In an effort to avoid layoffs, however, Greenburger asked many employees, including Plaintiff, to propose a salary reduction. SUMF at ¶ 79. Plaintiff refused to propose a salary reduction. SUMF at ¶ 80. Plaintiff admitted, however, that had he done so, it is "possible" he would not have been laid off. SUMF at ¶ 81.

Ultimately, Greenburger and Kantor decided to terminate Plaintiff's employment primarily because he performed responsibilities relating to real estate acquisitions and the company anticipated "very little" acquisition activity in 2009. SUMF at ¶ 82. In addition, based on Plaintiff's conduct at the performance evaluation meetings and his refusal to propose a salary reduction, Greenburger believed Plaintiff "didn't seem to be flexible" with respect to a reduced compensation or part time work. SUMF at ¶ 83. Kantor, who was not aware of Plaintiff's alleged "complaint" regarding Schermer, agreed with Greenburger's decision to terminate Plaintiff's employment. SUMF at ¶ 84.

In addition to Greenburg and Kantor, Rick Recny, Direct of Asset Management, who was similarly unaware of Plaintiff's alleged "complaint," recommended Plaintiff's termination. SUMF at ¶ 85. As Director of Asset Management, Recny is involved in every aspect of property management and had prior experience working with Plaintiff. SUMF at ¶¶ 86-87. In the fall of 2008, in response to Greenburger's inquiry, based on Recny's previous experience with Plaintiff, he also advised Kantor that he did not believe Plaintiff "had very great acquisition capabilities." SUMF at ¶ 88. This opinion was based on the fact that Plaintiff lacked a fundamental understanding of the ways in which buildings work. SUMF at ¶ 88. Recny

prepared a memorandum to Greenburger dated December 1, 2008 identifying individuals whose positions could be eliminated or who should be replaced with more competent employees in which he identified Plaintiff as an individual who "perfom[s] few responsibilities and their assignments could be reassigned to others."   SUMF at ¶ 89.   This assessment on his understanding that acquisitions at Time Equities would be significantly reduced in 2009 and also based on Plaintiff's relatively high salary as compared to other acquisitions employees.  SUMF at ¶ 90.

Plaintiff was advised that he was selected for layoff on January 14, 2009.  SUMF at ¶ 93.  No one was hired to replace Plaintiff.  SUMF at ¶ 94.  Neither Kantor nor Greenburger were aware of Plaintiff's national origin.  SUMF at ¶ 95.

## IX.   CONTINUED COST REDUCTION POLICIES AT TIME EQUITIES.

On January 30, 2009, Francis Greenburger sent a memo to all Time Equities employees referring to the economic situation as an "economic pearl harbor" and advising that "TEI faces major operating losses because of reduced transactional and development activity (the buying and selling of buildings, construction management, development projects, and condominium conversions of office and residential buildings."  SUMF at ¶ 96.  The January 30th memo advised that a "companywide salary adjustment will be put into effect as of February 15. . .", that a "limited number of TEI staff will be laid off" and that "staff for whom [TEI] does not have full time work will be offered the option of working part time, rather than being laid off."  SUMF at ¶ 97.

Greenburger's efforts to reduce costs continued into 2009.  SUMF at ¶ 98.  As a result of the varied cost reduction measures implemented by Time Equities, it is undisputed that a number of Time Equities employees lost their jobs and many took reductions in their salaries. SUMF at ¶¶ 99-101.   In fact, seventeen Time Equities employees were laid off between

12

September 2008 and August 2009 five of whom were in acquisitions or related departments (such as Asset Management or Development). SUMF at ¶ 100. In addition to these seventeen employees who were laid off, in or around August 2009 Luis Cozza was taken off payroll and several other employees went to part time work schedules. SUMF at ¶¶ 102-104.

It is undisputed that in 2008 Time Equities acquired twelve properties and sold three properties; in 2009, there was one acquisition and two sales; and in 2010, there were zero acquisitions and five sales. SUMF at ¶ 105. It is further undisputed that acquisition fees received by Time Equities were approximately $5,723,089.00 in 2007, $2,198,945.00 in 2008 and only $98,994.00 in 2009. SUMF at ¶ 106.

## X.   HEMOSENSE STOCK.

From around April 2007 through February 2008, Plaintiff bought and sold stocks in a company called Hemosense for Greenburger. SUMF at ¶ 108. Plaintiff, however, could not purchase or sell Hemosense stock without Greenburger's express permission. SUMF at ¶ 109. Plaintiff alleges that Greenburger earned a profit of approximately $289,000.00 on the Hemosense stock. SUMF at ¶ 110. It is undisputed that Greenburger agreed to pay, and did in fact pay, Plaintiff 3% of the profits he generated on the Hemosense stock. SUMF at ¶ 111. Nevertheless, Plaintiff claims he is entitled to a 20% commission on these profits, because that 20% is the "standard" fee for running a discretionary investment account or hedge fund. SUMF at ¶ 112. Plaintiff admits, however, he is not a hedge fund. SUMF at ¶ 113.

### APPLICABLE LEGAL STANDARD

To defeat summary judgment, a non-moving party "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible . . . ." *Sims v. City of New York*, 08 Civ. 5965, 2010 U.S. Dist. LEXIS 103536, at *3-4 (S.D.N.Y.

Sept. 29, 2010) (internal citations omitted).[2] *mot. granted, in part, mot. denied, in part*, 08 Civ. 5965(JGK), 2011 U.S. Dist. LEXIS 117000 (S.D.N.Y. Oct. 10, 2011). Rather, the non moving party must provide more than his own conclusory allegations which simply declare discrimination was present or that there is some meta-physical doubt as to the material facts. *See Forsyth v. Federation Emp't & Guidance Serv.*, 409 F.3d 565, 574 (2d Cir. 2005). Indeed, a litigant's "bald assertion," unsupported by evidence, is insufficient to overcome a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

## LEGAL ARGUMENT

### I.   PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM BASED UPON A SINGLE ALLEGED COMMENT BY HYMAN SCHERMER FAILS AS A MATTER OF LAW.

In this action Plaintiff alleges that in January 2008, his colleague Hy Schermer said to him "I'm going to f*** you in your little Iranian ass" and thereafter made two comments about the possibility of war between Israel and Iran. SUMF ¶¶ 23-31. There is absolutely *no* evidence in the record to support these allegations and the individual Plaintiff identified as having witnessed the remark, Chris Pulling, denied it was ever made. SUMF ¶ 26. Even assuming *arguendo* that Schermer made the alleged comments, Plaintiff's hostile work environment claims based on race, national origin and gender must be dismissed. As a matter of law the three alleged comments by a non-supervisor in the course of Plaintiff's two year employment do not constitute a hostile work environment under Title VII, the NYSHRL or the NYCHRL.

### A.   Plaintiff's Federal and State Hostile Work Environment Claims Fail.

Under Title VII and NYSHRL, a plaintiff asserting a hostile work environment

---

[2] Copies of unreported decisions cited herein are attached to the Declaration of Marjorie Kaye, Jr. as Exhibit "Z."

claim must demonstrate his workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment." *See Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999) (citations omitted); *Phillip v. City of New York*, 09 Civ. 442, 2012 U.S. Dist. LEXIS 55335, at *40 (E.D.N.Y. Apr. 19, 2012) (Title VII and the NYSHRL hostile work environment claims are analyzed under the same standard) *claim dismissed*, 09 Civ. 442, 2012 U.S. Dist. LEXIS 63966 (E.D.N.Y. May 7, 2012).   To establish that the alleged harassment is sufficiently severe or pervasive, Plaintiff must establish that either an isolated incident was extraordinarily severe or that a series of incidents were continuous and concentrated such that they altered the conditions of his employment. *See, e.g., Deters v. Lafuente*, 368 F.3d 185, 189 (2d Cir. 2004) (minor and infrequent incidents, as opposed to a "pattern of nearly constant harassment" are not actionable) (citation omitted); *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).   Indeed, the Second Circuit has explained that "[s]imple teasing, offhand comments, or isolated incidents of offensive conduct . . . will not support a claim of discriminatory harassment." *See Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004).

Accordingly, even in the light most favorable to Plaintiff, his allegations that Schermer made - - at most - - three discriminatory comments to him in or around January 2008 does not establish conduct severe or pervasive enough to alter the terms of Plaintiff's employment. *See also, e.g., Panzarino v. Deloitte & Touche LLP,* 05 Civ. 8502 (BSJ) (RLE), 2009 U.S. Dist. LEXIS 101209, at *25-29 (S.D.N.Y. Oct. 29, 2009) (dismissing Title VII, NYSHRL and NYCHRL hostile work environment claim where harasser made eight discriminatory comments in the course of two months); *Ricard v. Kraft Gen. Foods, Inc.,* No. 92 Civ. 2256 (GLG), 1993 U.S. Dist. LEXIS 21062, at *9 (S.D.N.Y. Mar. 16, 1993) (four sexually-

oriented incidents were held insufficient as a matter of law for a hostile work environment).

Plaintiff's hostile work environment claims must also be dismissed in light of Plaintiff's inability to adduce any evidence suggesting that Schermer's alleged conduct adversely affected his ability to perform his job duties. *See Panzarino,* 2009 U.S. Dist. LEXIS 101209, at *28-29 (dismissing Title VII, NYSHRL where plaintiff was able to perform her job despite alleged harassment), citing, *Blackman v. UNITE!,* 03 Civ. 9214 (GWG), 2005 U.S. Dist. LEXIS 18004, at *14 (S.D.N.Y. Aug. 25, 2005) (same). Indeed, Plaintiff told Greenburger in or around December 2008 that no other employee at Time Equities could "compare" to him. SUMF at ¶ 57. Finally, Plaintiff has withdrawn his claim for emotional distress damages and thus cannot establish any lasting psychological harm resulting from the alleged harassment. *See* Kaye Dec. at ¶ 34. For these reasons, Plaintiff's hostile work environment claims under Title VII and the NYSHRL should be dismissed.

### B. Plaintiff's Hostile Work Environment Claim Under the NYCHRL Fails.

Plaintiff's hostile work environment claim under the NCYHRL similarly fails. To establish a hostile work environment claim under the NYSCHRL, Plaintiff must establish he was treated "less well" than others outside of his protected classification(s) and that "the conduct [he] complain[s] of consists of more than petty slights and trivial inconveniences." *See Panzarino,* 2009 U.S. Dist. LEXIS 101209, at *30; *Williams v. N.Y.C. Hous. Auth.,* 61 A.D.3d 62, 872 N.Y.S. 2d 27, 41 (1st Dep't 2009), *leave to appeal denied,* 13 N.Y.3d 702, 885 N.Y.S.2d 716 (2009). The broader purposes of the NYCHRL, however, do not connote an intention that the law operate as a general civility code. *See Sims v. City of New York,* 08 Civ. 5965 (JGK), 2010 U.S. Dist. LEXIS 103536, at *33 (S.D.N.Y. Sept. 29, 2010); *Williams,* 61 A.D.3d at 79, 872 N.Y.S.2d at 40.

Even under the more expansive interpretation of the NYCHRL, the isolated comments identified by Plaintiff in this action do not rise to the level of actionable harassment. For example in *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 09 Civ. 1251 (DAB), 2011 U.S. Dist. LEXIS 84790, at *28-30 (S.D.N.Y. July 28, 2011), the Southern District granted summary judgment for the defendant where plaintiff testified her former employer showed her "pornography once or twice a month" for six months, "commented repeatedly on her appearance in an objectifying and demeaning manner and propositioned her twice in December 2007" holding such comments "are certainly boorish and offensive, but are not so grave or objectionable that they would have altered the conditions of [the plaintiff's] employment." *See id; accord Panzarino,* 2009 U.S. Dist. LEXIS 101209, at *25 (dismissing NYCHRL hostile work environment claim based on, *inter alia,* eight discriminatory comments); *Wilson v. N.Y.P. Holdings, Inc.*, No. 05 Civ. 10355, 2009 U.S. Dist. LEXIS 28876, at *89, 2009 WL 873206, at *29 (S.D.N.Y. Mar. 31, 2009) (finding that under NYCHRL references to black female employees as "whores," "sluts," and "girls," among other things, amounted to no more than "petty slights and inconveniences"), *aff'd, Watson v. N.Y. Pressman's Union No. 2, NYP Holdings, Inc.,* 444 Fed Appx. 500 (2d Cir. 2011). Accordingly, Plaintiff's hostile work environment claims comprised of far fewer and far less significant events fail under the NYCHRL and should be dismissed. *See, e.g., Magnoni v. Smith & Laquercia, LLP*, 701 F. Supp. 2d 497, 505-506 (S.D.N.Y. 2010) (finding that plaintiff's uncorroborated testimony of daily sexual harassment by supervisor along with admissions by the supervisor that he told plaintiff explicit details of his sex life, called her "voluptuous," and touched her knees on occasion was not enough to constitute a hostile work environment under the NYCHRL), *aff'd,* No. 10-1103-cv, 2012 U.S. App. LEXIS 10344 (2d. Cir. May 23, 2012).

**C.  Plaintiff's Discrimination Claims Against The Individually Named Defendants Should Be Dismissed.**

For the reasons stated above, Plaintiff's discrimination claims under the NYSHRL and NYCHRL against the individually named Defendants should be dismissed.  In addition, Plaintiff's hostile work environment claim against Defendant Kantor should be dismissed for the additional reason that Plaintiff identifies no basis of liability against Kantor.  *See generally,* Plaintiff's Deposition Transcript attached to the Kaye Dec. as Exh. A.

**II.   PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE OF RETALIATION.**

Plaintiff asserts retaliation claims under Title VII, the NYSHRL and the NYCHRL, all of which are analyzed under the Title VII burden shifting framework.  *See generally McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-803 (1973); *Farias v. Instructional Sys., Inc.,* 259 F.3d 91 (2d Cir. 2001) (NYSHRL retaliation claim analyzed under Title VII framework); *Alvarez v. Rosa,* 11 CIV. 3818 (KBF), 2012 U.S. Dist. LEXIS 25693, at *14-15 (S.D.N.Y. Feb. 28, 2012) (NYCHRL retaliation claim analyzed under Title VII).  To establish a *prima facie* case of retaliation, Plaintiff must show: (1) he participated in a protected activity; (2) the employer was aware of that activity; (3) he was subject to a material adverse employment decision; and (4) the adverse employment decision resulted from the protected activity, *i.e.,* a causal connection between the protected activity and the adverse employment action.  *See Blanco v. Brogan,* 620 F. Supp. 2d 546, 553 (S.D.N.Y. 2009); *see also Holtz v. Rockefeller Ctr., Inc.,* 258 F.3d 62 (2d Cir. 2001).  Plaintiff cannot establish a prima facie claim of retaliation since he did not participate in a protected activity.

**A.  Plaintiff Cannot Establish he Participated in a Protected Activity.**

Specifically, Plaintiff alleges that on or about December 12, 2008 he told Greenburger about Schermer's alleged "I'm going to f*** you . . ." comment.  SUMF at ¶ 71.

There is absolutely no credible evidence in the record to establish that Plaintiff *ever* complained to Greenburger.   Nevertheless, even assuming for purposes of this motion that Plaintiff did complain to Greenburger, this alleged complaint does not constitute a protected activity because the "complaint": (1) was not made in good faith, but rather was designed to shield Plaintiff from the consequences of his own poor conduct during his 2008 performance evaluation meetings and the impending layoff that had been telegraphed to him by Mr. Greenburger during his 2008 performance evaluation meetings and (2) was not objectively reasonable since no reasonable person could possibly believe that a single alleged comment, by a non supervisory colleague, allegedly made one year prior, could constitute a hostile work environment.

### B.  Plaintiff's December 12, 2008 Complaint to Greenburger Was Not Made in Good Faith.

To establish a *prima facie* claim of retaliation, Plaintiff must establish he made a *good faith* and reasonable complaint of discrimination, which Plaintiff cannot do.  *See, e.g., Mayers v. Emigrant Bancorp, Inc.,* 796 F. Supp. 2d 434, 448 (S.D.N.Y. 2011).  Here, the facts establish that Plaintiff's alleged complaint of discrimination to Greenburger - - twelve months after the alleged comment -- was a transparent attempt to shield himself from the consequences of his exceedingly poor behavior during his 2008 performance evaluations and to protect himself from possible layoff and/or salary reductions which were going into effect throughout Time Equities.   Indeed, there is no other credible explanation for Plaintiff not having complained contemporaneously with the alleged comment and instead waiting nearly one full year to complain.   Similarly, the timing of Plaintiff's alleged complaint - - just two days after the conclusion of 2008 performance evaluation - - raises significant questions as to the legitimacy of his complaint.  Specifically, during the course of Plaintiff's 2008 evaluation:

- Greenburger told Plaintiff his job performance hadn't "impressed" him and Greenburger criticized Plaintiff for having ignored one of his responsibilities, *i.e.*, the development of a companywide financial model.  SUMF at ¶¶ 49-51.

- Greenburger advised Plaintiff that Plaintiff does not give "credence" to Greenburger's point of view.  SUMF at ¶ 56.

- Greenburger commented he observed a lot of negativity from Plaintiff and that Greenburger was "uncomfortable" around Plaintiff's level of frustration, commenting he "can't have someone working for me who doesn't respect me." SUMF at ¶¶ 54-55.

- Greenburger told Plaintiff he was not happy with "the way things were going." SUMF at ¶ 62.

- Greenburger advised Plaintiff the likelihood of him continuing in his position at his current salary level was low and discussed the various cost cutting measures Greenburger was considering, including reductions in salary, changing base salaries and layoffs. SUMF at ¶ 65.

- Plaintiff informed Greenburger that he had "millions of ideas" that he didn't see the "upside" in sharing without additional compensation. SUMF at ¶ 58.

- Plaintiff reviewed all the "mistakes" Greenburger made over the course of the prior year (and generated a memo entitled "Francis' mistakes"). SUMF at ¶ 59.

- Plaintiff told Greenburger that if Greenburger was thinking about laying Plaintiff off and Plaintiff instructed Greenburger: "if you ever felt like after the things I've done for you this past year here, or the work I've done, if you feel like you're going to lay me off, then why don't we – why don't you do that now." SUMF at ¶ 67.

Certainly, any reasonable person would understand that the above conduct could lead to disciplinary action especially when viewed in the larger of context of Time Equities' companywide staff and salary reductions, as well as the recent layoffs of at least two of Plaintiff's colleagues. *See, e.g.,* SUMF at ¶¶ 32-43;68-69;75-79, 96-105.  For these reasons, the record establishes that Plaintiff lacked a good faith belief of discrimination when he allegedly complained to Greenburger, necessitating dismissal of Plaintiff's retaliation claims.

### C. **Plaintiff's Complaint to Greenburger Was Not Objectively Reasonable.**

Assuming *arguendo* that Plaintiff can establish that his alleged complaint to Greenburger was made in good faith, his retaliation claim must nevertheless be dismissed since Plaintiff cannot prove his complaint was "objectively reasonable." *See Springle v. Metro. Transp. Auth.*, 06 Civ. 734 (GEL), 2008 U.S. Dist. LEXIS 7875, at *35 (S.D.N.Y., Feb. 1, 2009); *see also, e.g., De Los Santos v. City of New York,* 482 F. Supp. 2d 346, 355 (S.D.N.Y. 2007). Specifically, to establish a *prima facie* case of unlawful retaliation under Title VII, the NYSHRL and NYCHRL, a plaintiff must establish that he possessed a good faith, *reasonable* belief that the underlying employment practice was unlawful. *See, e.g., Mayers v. Emigrant Bancorp, Inc.,* 796 F. Supp. 2d 434, 448 (S.D.N.Y. 2011) (collecting cases at n.19) (NYCHRL retaliation claim requires plaintiff to have reasonable belief the employment practice violates the law); *Springle*, 2008 U.S. Dist. LEXIS 7875 (same). The relevant inquiry, then, is whether, considering the totality of the circumstances, there was an *objective* basis for plaintiff to believe that Defendant had engaged in unlawful conduct. *See, e.g., Springle,* 2008 U.S. Dist. LEXIS 7875. This standard requires Plaintiff to present *evidence* of *conduct existing at the time of his complaint* that is indicative of discrimination, which he cannot do. *See, e.g., Spadola v. N.Y.C. Transit Auth.,* 242 F. Supp. 2d 284, 293 (S.D.N.Y. 2003).

For example, in *Spadola*, this Court dismissed a retaliation claim where the plaintiff complained about a single, isolated discriminatory comment without presenting evidence that the challenged conduct was repeated or that it otherwise manifested a work environment objectively hostile or abusive. *See* 242 F. Supp. 2d at 293 (S.D.N.Y. 2003) (Marrero, J.). In dismissing the retaliation claim, the Court relied, in part, on the fact that the challenged remark was uttered by a co-worker who was not the plaintiff's supervisor and concluded that "no rational jury could find that, under the totality of the circumstances evidenced

here, [the] isolated allegedly harassing remark . . . constituted a sufficient ground to support a good faith, objectively reasonable belief that the offending conduct constituted" a hostile work environment and ultimately held the plaintiff did not "engage[] in a protected activity when he protested the comment as an unlawful employment practice." *See id.*

Here too, Plaintiff did not participate in a protected activity since the single alleged incident Plaintiff cites here as evidence of a hostile work environment is manifestly insufficient to establish a cause of action. *See generally, e.g.*, *Springle*, 2008 U.S. Dist. LEXIS 7875 (dismissing retaliation claim where plaintiff's complaints were "devoid of any legal merit" and where "'no reasonable person' in [the plaintiff's] 'position possibly could have [believed]'" that the incidents alleged in the complaints were motivated by race or created an objectively hostile work environment") (citation omitted); *Wimmer v. Suffolk Cnty. Police Dep't*, 176 F.3d 125, 134 (2d Cir. 1999) (plaintiff "failed to establish that he was engaged in a protected activity" where no evidence supported his claim of discrimination); *Mayers,* 796 F. Supp. 2d at 448.  For these reasons, too, Plaintiff's retaliation claim fails. *See, e.g., Malaney v. El Al Isr. Airlines,* 331 Fed. Appx. 772, 775 (2d Cir. 2009) (affirming summary judgment on NYCHRL retaliation claim where plaintiff's complaints "did not include allegations of discrimination or other unlawful employment practices sufficient to demonstrate participation in a protected activity").

## D. **Plaintiff Cannot Establish Causation.**

Similarly, even if Plaintiff had participated in a protected activity, he cannot establish causation necessary to establish a *prima facie* claim of retaliation.  Specifically, where, as here, timing is the "only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity an inference of retaliation does not arise." *See, e.g., Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001).  It is undisputed that the need for layoffs and reduced costs at Time Equities long pre-date

Plaintiff's alleged protected activity and that Plaintiff was identified for layoff as early as October 2008 - - months prior to his alleged complaint.  It is further undisputed that at least two memoranda to all staff were distributed in early December 2008 warning of impending layoffs and related cost reduction measures and that Greenburger advised Plaintiff *multiple times* during his 2008 performance evaluation that his job was not secure, all of which pre-date Plaintiff's alleged protected activity.  Since Plaintiff fails to present any *evidence* of causation, Plaintiff's exclusive reliance on temporal proximity between his alleged complaint and the date of his layoff is insufficient to establish causation.  *See Spadola*, 242 F. Supp. 2d at 294-295 (employer "not obligated to automatically cease or abandon" ongoing employment actions merely because an employee complained of discrimination.)

## III.   **PLAINTIFF HAS NOT ESTABLISHED DEFENDANTS' LEGITIMATE NON RETALIATORY BUSINESS REASONS SUPPORTING HIS TERMINATION ARE A PRETEXT FOR RETALIATORY ANIMUS.**

Defendants have presented legitimate non-retaliatory business reasons supporting Plaintiff's termination, specifically, companywide reduction in staffing levels and costs stemming from an economic recession.  *See, e.g., Bandhan v. Lab. Corp. of Am.*, 99 Civ. 12086 (RMB)(GAY), 2002 U.S. Dist. LEXIS 25972, at * 20 (S.D.N.Y. Mar. 27, 2002).  Indeed, the evidence establishes that Plaintiff was selected for layoff because he was "inflexible" with respect to proposed reduction in salary at a time when the company was consumed with cost cutting measures.   Further, Plaintiff's job responsibilities primarily involved real estate acquisitions and Time Equities anticipated an almost wholesale elimination of acquisitions in 2009.  Similarly, it is undisputed that Plaintiff was universally disliked at Time Equities and that he displayed aggressive and insubordinate behavior at his 2008 performance evaluation.  *See, e.g., Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir. 1985) (affirming grant of summary judgment

and holding a plaintiff's inability to get along with colleagues constitute legitimate, non-discriminatory reasons for employee's discharge).

A plaintiff cannot satisfy his ultimate burden of proof of retaliatory animus by asking the Court to determine whether a company's job-related decisions were proper under the circumstances and courts should "not sit as a 'super-personnel department,' second-guessing the wisdom of employment decisions." *See Darrell v. Con Edison*, 10 Civ. 1866 (KBF), 2012 U.S. Dist. LEXIS 16395, at *15 (S.D.N.Y. Feb. 7, 2012) (internal citations omitted); *see also Newsom-Lang v. Warren Int'l, Inc.*, 80 Fed. Appx. 124, 126 (2d Cir. 2003) (internal quotation and citation omitted).

Here, Plaintiff presents <u>no</u> facts to defeat Defendant's proffered reason for his lay off, and instead relies exclusively on conclusory allegations of retaliation and Plaintiff's subjective evaluation of his own performance, which is insufficient to establish pretext. *See, e.g., Lessambo v. PricewaterhouseCoopers, L.P.*, 08 Civ. 6272 (WHP) 2010 U.S. Dist. LEXIS 107827, at *26 (an employee's disagreement with employer's assessments of his work does not demonstrate pretext) *aff'd in part and appeal dismissed in part*, 451 Fed. Appx. 57 (2d Cir. 2011). Dispositively, Plaintiff <u>admits</u> that Greenburger offered him options less drastic than termination, including a reduction in salary which Plaintiff refused. SUMF at ¶¶ 79-80. Plaintiff also <u>admits</u> that had he been more flexible with respect to a reduction in compensation, he likely would not have been terminated. SUMF at ¶ 81. Critically, Plaintiff has not offered any evidence to establish the across-the-board cost reduction measures implemented at Time Equities from the fall 2008 through 2009, and his resulting layoff, were merely a pretext to retaliate against him.

Further, to the extent that Plaintiff is claiming Greenburger did not approve a number of real estate acquisitions Plaintiff proposed in the fall of 2008, in order to retaliate against Plaintiff for his alleged participation in a protected activity this claim fails. Specifically, Time Equities *never* acquired the properties in question. *See, e.g.,* Deposition Transcript of Francis Greenburger, relevant portions of which are attached to the Kaye Dec. as Exh. "E" at 37-38, 40-42 and 48-49. Indeed, it is undisputed that Time Equities' acquisition levels plummeted from twelve acquisitions in 2008 to one acquisition in 2009. SUMF at ¶¶ 105-106. Finally, although Plaintiff appears to claim that Greenburger and Kantor defamed him to prospective employers in order to retaliate against him for having complained about Schermer, there is absolutely no evidence to support this allegation.[3] See Pl's Dep. Tr. at 227-228, 231. For these reasons, Defendants are entitled to summary judgment on Plaintiff's retaliation claims.

## IV.    PLAINTIFF'S BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED.

In his Amended Complaint, Plaintiff asserts a breach of contract claim against Time Equities and Greenburger arguing that in or about "March 2007 Greenburger entered into an agreement with Plaintiff whereby Plaintiff would, separate and apart from his duties as an employee of Time [Equities], manage Greenburger's investment in Hemosense by buying and selling Hemosense stock" and that Greenburger "agreed to pay Plaintiff for his successful efforts in managing this investment by way of additional compensation. . . ." *See* Am. Complaint at ¶ 90. It is undisputed that the only agreement between Greenburger and Plaintiff with respect to Plaintiff's entitlement to compensation for his work on Hemosense was Greenburger's agreement in or around December of 2008 to pay Plaintiff 3% of the profits earned on the

---

[3] In addition to the foregoing reasons necessitating dismissal of Plaintiff's retaliation claims, these claims should similarly be dismissed against Kantor and Schermer for the additional reason that Plaintiff identifies no factual basis to impose any liability against either individual and there is no evidence that Schermer had any decision making authority in connection with Plaintiff's termination or Time Equities' selection of acquisitions. *See, e.g.,* Pl's Dep. Tr. at 216.

Hemosense account.  Even assuming Plaintiff's allegation is correct that $289,000.00 in profits were generated on the Hemosense stock, it is undisputed that Greenburger paid Plaintiff $14,000.00 as a bonus in 2008.  SUMF at ¶ 111.  This sum includes a payment of 3% of the profits on the Hemosense account.  Accordingly, since Plaintiff cannot establish a "breach" of any alleged contract, this claim should be dismissed with prejudice.

## V.       PLAINTIFF'S QUASI CONTRACT CLAIM SHOULD BE DISMISSED.

Plaintiff also advances a claim for quantum meruit based on the same facts that comprise his breach of contract claim.  Plaintiff's quantum meruit claim must be dismissed, however, because recovery under quasi-contractual remedies, such as quantum meruit, are precluded as a matter of law when there is an express contract between the parties addressing the same subject matter at issue.  *See, e.g., Goldman v. Metro. Life Ins. Co.,* 5 N.Y.3d 561, 572 (2005); *citing, Clark-Fitzpatrick, Inc. v. Long Island R. Co.,* 70 N.Y.2d 382, 388 (1987) (existence of a valid and enforceable written contract governing a particular subject matter precludes recovery in quasi contract for events arising out of the same subject matter), *appeal denied,* 81 N.Y.2d 70, 599 N.Y.S.2d 804 (1993).

Even if this Court considers Plaintiff's quantum meruit claim, however, in order to recover in *quantum meruit* under New York law, a claimant must establish: (1) the performance of services in good faith; (2) the acceptance of the services by the person to whom they are rendered; (3) an expectation of compensation therefor; and (4) the reasonable value of the services.  *See Gould v. Lightstone Value Plus Real Estate Inv. Trust, Inc.,* 301 Fed. Appx. 97, 99 (2d Cir. 2008).  Assuming *arguendo* that Plaintiff could establish the first three elements of a cause of action for quantum meruit, he cannot establish the fourth and final element, *i.e.,* the reasonable valuation of his services.    Plaintiff bears the burden of proving this by a preponderance of *competent* evidence.  *See, e.g., Aniero Concrete Co. v. Aetna Cas. & Sur. Co.,*

94 Civ. 9111 (CSH), 2002 U.S. Dist. LEXIS 20527, at *7-8 (S.D.N.Y. Oct. 24, 2002).  Here, the only "evidence" regarding the reasonable value of Plaintiff's services is *Plaintiff's* own subjective belief as to what he desired to be paid - - 20% of the profits.  The basis for this claim is that 20% is the "standard" fee for running a discretionary investment account or hedge fund. SUMF at ¶ 112.  It is not disputed, however, that Plaintiff had no independent authority to buy or sell stocks and that Greenburger's single account was not a hedge fund. SUMF at ¶ 113.

It is well-settled law that bare assertions, conclusory allegations and subjective opinions are insufficient to satisfy a plaintiff's burden of proof.  *See, e.g., Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (citing *Butler v. Castro*, 896 F.2d 698, 700 (2d Cir. 1990) ("A conclusory allegation . . . without evidentiary support . . . does not state a valid claim.")).  Since Plaintiff has not presented any *competent* evidence establishing the reasonable value of his services, his quantum meruit claim must fail as a matter of law.  *See, e.g., Geraldi v. Melamid*, 212 A.D.2d 575, 576 (2d Dep't 1995) (dismissing plaintiff's quantum meruit claim on the grounds that "the record is devoid of evidence which would establish the reasonable value of [plaintiff's] services") (emphasis added); *see also Weinrich v. Sandhaus*, 850 F. Supp. 1169, 1183-84 (S.D.N.Y. 1994) (limiting plaintiff's quantum meruit damages on the grounds that "[t]he primary evidence presented in support of [plaintiff's claim] is his own testimony, which was not credible [and because plaintiff] neither kept time records nor ever billed the defendants for the work he allegedly performed") *amended, mot. denied, in part*, 156 F.R.D. 60 (S.D.N.Y. 1994).  For these reasons, Plaintiff's claim for quantum meruit should be dismissed.

## **CONCLUSION**

Based on the foregoing, Defendant respectfully requests that this Court enter an Order granting its Motion for Summary Judgment and dismissing Plaintiff's Amended Complaint in its entirety.

Respectfully submitted,
JACKSON LEWIS LLP
666 Third Avenue, 29th Floor
New York, New York 10017
(212) 545-4000

Dated: May 31, 2012          By: _____
      New York, New York          Marjorie Kaye, Jr. (MK 7141)
                                    Gena Usenheimer (GU 4969)

4832-3272-8335, v. 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BIJAN KARIMIAN,

               Plaintiff,

    v.

TIME EQUITIES, INC., FRANCIS
GREENBURGER, ROBERT KANTOR
AND HYMAN SCHERMER.

               Defendants.

Civil Action No.: 10 Civ. 3773 (AKH)

ECF CASE

**TABLE OF CONTENTS
DECLARATIONS AND EXHIBITS**

**DECLARATION OF MARJORIE KAYE, JR.**

1. Exhibit A:     Plaintiff Bijan Karimian's deposition transcript

2. Exhibit B:     Relevant portions of Defendants' Employee Handbook including Defendants' Equal Employment Opportunity and Harassment Policies

3. Exhibit C:     Plaintiff's signed acknowledgement of receipt of the Employee Handbook

4. Exhibit D:     October 1, 2008 Memorandum to all employees from Francis Greenburger and Robert Kantor

5. Exhibit E:     Portions of the transcript of the deposition of Francis Greenburger deposition

6. Exhibit F:     Portions of the transcript of the deposition of Robert Kantor

7. Exhibit G:     Portions of the transcript of the deposition of Hyman Schermer

8. Exhibit H:     Portions of the transcript of the deposition of Richard Recny

9. Exhibit I:     Portions of the transcript of the deposition of Christopher Pulling

10. Exhibit J:     Portions of the transcript of the deposition of Gary Limjuco

11. Exhibit K:     Email correspondence between Greenburger and Plaintiff from in or around October 2006

12. Exhibit L:     Email correspondence from Greenburger to Plaintiff dated November 30, 2007

1

13. Exhibit M:     Interoffice memorandum from Plaintiff to Greenburger dated

14. Exhibit N:     Portions of Plaintiff's Charge of Discrimination at the Equal Employment Opportunity Commission ("EEOC") and the EEOC's Charge Detail Inquiry

15. Exhibit O:     Email correspondence from Greenburger to Phillip A. Gesue dated October 20, 2008

16. Exhibit P:     December 2, 2008 memorandum to all Time Equities staff

17. Exhibit Q:     December 8, 2008 memorandum to all Time Equities staff

18. Exhibit R:     A memorandum prepared by Plaintiff entitled "Francis's Mistakes"

19. Exhibit S:     Notes prepared by Mr. Greenburger dated December 13, 2008

20. Exhibit T:     Memorandum prepared by Richard Recny dated December 31, 2008

21. Exhibit U:     Memorandum prepared by John Haslach to Kantor dated December 24, 2008

22. Exhibit V:     Email correspondence from Phillip A. Gesue to Kantor dated January 4, 2009

23. Exhibit W:     Memorandum prepared by Richard Recny dated December 1, 2008

24. Exhibit X:     Memorandum from Greenburger to all Time Equities employees dated January 30, 2009

25. Exhibit Z:     Copies of unreported decisions cited in Defendants' Memorandum of Law

26. Exhibit EE:    Email correspondence wherein Plaintiff withdraws his claim for emotion distress damages

## DECLARATION OF FRANCIS GREENBURGER

1.  Exhibit AA:    Email correspondence from Greenburger to Robert Kantor from in or around September 2008

2.  Exhibit BB:    Copies of Greenburger's notes in connection with cost reduction strategies and possible layoffs of Time Equities staff

3.  Exhibit CC:    Handwritten notes prepared in the fall of 2008 throughout approximately May 2009 by Greenburger

4.  Exhibit DD:   Email correspondence from Greenburger dated December 8, 2008

### DECLARATION OF ROBERT KANTOR

1.  Exhibit FF:   Spreadsheet listing a number of employees in the Acquisitions and Asset Management departments and ratings reflecting his or her relative value to the company

2.  Exhibit GG:   Copies of memoranda submitted to Kantor in or around December 2008

3.  Exhibit HH:   Memorandum prepared by Recny and submitted to Kantor and Greenburger dated March 2, 2009

4.  Exhibit II:    Listing of all Time Equities employees who were laid off, terminated or who resigned between 2008 and 2010

5.  Exhibit JJ:    Chart reflecting employees who received salary reductions in or around January 2009

6.  Exhibit KK:   Email correspondence prepared by Kantor dated May 19, 2009

7.  Exhibit LL:    Chart reflecting the number of acquisitions and sales at Time Equities from 2008 through 2010

8.  Exhibit MM:  Copy of Time Equities' payroll change request form reflecting Plaintiff's receipt of a $14,000.00 bonus in or around November or December of 2008

9.  Exhibit NN:   Email correspondence prepared by Kantor on or around December 29, 2008

10. Exhibit OO:   True and correct copies of Time Equities' Financial Statements for 2006 through 2009 are attached hereto as Exhibit "OO."

### DECLARATION OF RICHARD RECNY

1.  Exhibit PP:   April 9, 2009 memorandum from Recny to Clifton Martin

2.  Exhibit QQ:   Memorandum from Recny to Greenburger dated May 11, 2009

### DECLARATION OF BRUCE FEDER

1. Exhibit RR:   Email correspondence dated June 30, 2008

2. Exhibit SS:   Email correspondence dated October 17, 2008

3